UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD B.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

1:20-CV-00585-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 26).

Plaintiff Richard B.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 19) is denied and defendant's motion (Dkt. No. 21) is granted.

## BACKGROUND[2]

Plaintiff protectively filed an application for DIB on September 24, 2018 alleging disability since April 1, 2012 due to brain injury, post-traumatic stress disorder (PTSD),

---

[1] In accordance with the District's November 18, 2020 Standing Order, plaintiff is identified by first name and last initial.

[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

depression, and anxiety. (*See* Tr. 203-04, 235-42).[3] Although Plaintiff alleged disability since April 1, 2012, he was receiving disability benefits from a prior claim through November 17, 2017, at which time those benefits were ceased. That cessation is not at issue in this case, and the Administrative Law Judge determined that the relevant period for this application began on November 17, 2017. (Tr. 15). Plaintiff's SSI application was initially denied on February 14, 2019. (Tr. 134-36). Plaintiff sought review of the determination, and a hearing was held before Administrative Law Judge ("ALJ") Stephen Cordovani on November 18, 2019. (Tr. 33-95). ALJ Cordovani heard testimony from plaintiff, who was not represented by counsel, and Michael Smith, an impartial vocational expert ("VE"). (*Id.*). On December 31, 2019, ALJ Cordovani issued a decision that plaintiff was not disabled under the Act. (Tr. 12-31). Plaintiff sought review by the Appeals Council and his request was denied. (Tr. 1-6). The ALJ's December 31, 2019 denial of benefits became the Commissioner's final determination, and the instant lawsuit followed.

Born on April 27, 1979, plaintiff was 32 years old on the alleged disability onset date and 40 years old on the date of the hearing. (Tr. 233). Plaintiff is able to communicate in English, has a high school education, and previously worked as a form carpenter, machine operator, stock person, and dairy farm herdsman/milker/hood trimmer. (Tr. 237).

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such

---

[3] References to "Tr." are to the administrative record in this case.

relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

3

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not

4

engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot

perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

ALJ Cordovani found that plaintiff met the insured status requirements of the Act through March 31, 2023. (Tr. 18). The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since November 17, 2017, the period at issue. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) status post multiple TBI; (2) PTSD; (3) polysubstance abuse and dependence; (3) status post L5-S1 micro discectomy; and (4) right distal bicep tendon rupture with surgical reconstruction and allograft. (*Id.*). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19-21). Before proceeding to step four, the ALJ assessed that plaintiff had the following RFC:

> [T]he [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can perform frequent climbing of ramps and stairs; frequent stooping, kneeling, crouching and crawling; no

6

>climbing of ladders, ropes or scaffolds; moderate noise exposure; no work around unprotected heights; can understand remember and carry out simple instructions and tasks; able to work in a low stress work environment reflected by simple, unskilled work, no supervisory duties, no independent decision-making or goal setting, no strict production quotas, minimal changes in work routine and processes; occasional interaction with supervisors, co-workers and the general public; no team, tandem or co-dependent work.

(Tr. 21).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Smith to conclude that plaintiff was unable to perform past relevant work given the limitations set forth in his residual functional capacity. (Tr. 24-25). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed. (Tr. 25). However, the ALJ assessed that plaintiff's ability to perform sedentary work was compromised by additional limitations. (*Id.*) Proceeding to step five, and after considering testimony from VE Steinbrenner in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as collator-operator, cleaner/housekeeping, and routing clerk. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from November 17, 2017 through December 31, 2019, the date of the decision. (Tr. 26).

IV. *Plaintiff's Challenges*

Plaintiff argues that the "ALJ failed to reconcile conflicts between his special technique findings, RFC determination, and Drs. Fabiano's and Khanam's opinions which he found to be general[ly] persuasive." (Dkt. No. 19-1, pg. 1). The Court disagrees and finds that the ALJ's decision is supported by substantial evidence.

7

Initially, the Court notes that a new regulatory framework for evaluating medical opinions and other medical evidence applies to this case, as it was filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revised regulations significantly alter how the agency considers medical opinions and prior administrative medical finding for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). The "treating source rule" is no longer in effect, and the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (2017). Further, although the ALJ must articulate his or her consideration of all medical opinions, he or she is no longer mandated to follow particularized procedures for evaluation of opinions from treating sources (e.g., the requirement that ALJs must "give good reasons" for the weight given to a treating source opinion). *Compare* 20 C.F.R. § 404.1527(c) (2016) *with* 20 C.F.R. § 404.1520c(b) (2017). Instead, the ALJ is directed to focus on the persuasiveness of the medical opinion(s) and articulate how he or she considered the most important factors or supportability and consistency. 20 C.F.R. § 404.1520c(b). The ALJ may, but is not required to, explain his or her consideration of the remaining factors, i.e., relationship to the claimant, specialization, and other factors, unless he finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(3).

### a. *Listings-Level Impairment Determination*

Plaintiff challenges the ALJ's determination that his mental conditions did not meet a listing-level impairment at step three of the sequential process.

In assessing mental impairments at step three, the ALJ must employ a "special technique" to evaluate the severity of a claimant's mental impairments. *See Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008). This technique involves rating a claimant's degree of functioning in four broad functional areas, otherwise known as the "paragraph B" criteria. *See* 20 C.F.R. § 404.1520a. The ALJ must evaluate a claimant's limitation in ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). Such rating is based on a five-point scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). To meet the Social Security Administration's Listing of Impairments for a mental disorder, a claimant must have the following "paragraph B" limitations:

> (B) Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>   1. Understand, remember, or apply information.
>   2. Interact with others.
>   3. Concentrate, persist, or maintain pace.
>   4. Adapt or manage oneself.

*See* https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm.

Plaintiff argues that the ALJ failed to explain why he did not rely on the opinions of a psychiatric consultative examiner, Dr. Fabiano, and treating physician, Dr. Khanam, which plaintiff believes indicated marked limitations in two of those areas of mental

9

functioning.[4] Plaintiff further argues that Dr. Fabiano's assessment suggested that plaintiff's PTSD met Listing 12.15.

Here, the ALJ used the special technique prescribed by the regulations and reasonably considered "all of the relevant medical and non-medical evidence" in assessing that plaintiff had no more than moderate limitation in each of the four functional areas. (Tr. 19-21). Accordingly, he concluded that plaintiff did not meet listings 12.02, 12.04, 12.06, or 12.15. (*Id.*). In reaching these conclusions, the ALJ properly relied in part on the reports of two state agency psychologists, Drs. Juriga and Hoffman, who found that plaintiff had "moderate" impairments in each of the paragraph B categories, and stated that plaintiff's impairments did not meet, medically equal, or functionally equal a listed impairment. (Tr. 102-03, 122). *See Frye v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). The also ALJ identified and discussed specific evidence in the record relevant to plaintiff's mental functioning. He provided considerable explanation for his conclusions about plaintiff's functional ability in each paragraph B category, including by reference to examination findings relative to understanding and memory, plaintiff's own reports of social functioning, examination findings and plaintiff's reports regarding attention and concentration, and mental health treatment history as it related to adapting and managing oneself. Because his mental impairments did not cause marked limitation

---

[4] The Court notes that plaintiff only challenges the ALJ's "paragraph B" evaluation of his mental impairments and does not argue that he erred in evaluating any of the other listings' criteria.

in two categories or extreme limitation in any one category, the ALJ concluded that plaintiff did not meet the criteria.

Dr. Fabiano opined that plaintiff had "marked" limitations in his ability to understand, remember, or apply complex directions and instructions; interact adequately with supervisors, co-workers, and the public; and regulate emotions, control behavior, and maintain well-being. (Tr. 334). He assessed mild to moderate limitation in all other mental functions. (*Id.*). Dr. Khanam opined that plaintiff had no limitation in understanding and memory; limitation in social interaction because plaintiff "can't trust people;" and limitation in adaptation based on "feel[ing] uncomfortable around people." (Tr. 811-12). Dr. Khanam was unable to assess plaintiff's concentration and persistence abilities. (*Id.*). Although the ALJ did not adopt Dr. Fabiano's opinion that plaintiff had marked limitations in those areas, he did expressly consider and cite Dr. Fabiano's examinations in his step three analysis. (Tr. 20). More specifically, he referred to Dr. Fabiano's findings that plaintiff was cooperative during the exam, with intact attention, concentration, and immediate memory recall. (*Id.*). He also considered Dr. Fabiano's notes that plaintiff expressed problems dealing with large crowds, his family, and others. Further, Dr. Khanam's vague and nonspecific assessment of limitations in two areas of function does not conflict with the ALJ's determination of the degree of plaintiff's impairments.

Here, the ALJ's rationale in reaching his step three determination was clear even without explanation of every piece of opinion evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence

11

unpersuasive or insufficient to lead him to a conclusion of disability."). The ALJ was well within his duty to reconcile the conflicting evidence and determine that the plaintiff's impairments, or combination of impairments, did not meet or equal a listing. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original). Plaintiff has not met his step three burden to demonstrate that his impairments met or equaled a listing.

Plaintiff's argument that the ALJ failed to explain why he found that plaintiff had only moderate limitations in the four areas of mental functioning despite finding Dr. Fabiano and Dr. Khanam's opinions "generally persuasive" in assessing his RFC misses the mark. The determination of the step three factors of impairment are distinct from the determination of RFC at step four. *See Whipple v. Astrue*, 479 Fed. Appx. 367, 369 (2d Cir. 2012) (summary order) ("The regulations make clear that [the step three] factors are only to be applied in determining the severity of a mental impairment ... not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps); *Pidgeon v. Comm'r of Soc. Sec.*, 15-CV-6578, 2017 U.S. Dist. LEXIS 172565, at *22-23 (W.D.N.Y. Oct. 18, 2017) (noting that the ALJ's findings at step 3 of the sequential analysis are not an RFC determination); *Avant v. Colvin*, 15-CV-06671, 2016 U.S. Dist. LEXIS 138480, at *8 (W.D.N.Y. Oct. 5, 2016) ("The 'special technique' applied at steps two and three assesses the functional effects of a claimant's mental impairments, but it 'is entirely separate and analytically distinct from, a subsequent determination of mental residual functional capacity [...]"). Indeed, a Step three determination is not an RFC assessment, but instead

is used to rate the severity of mental impairment. *See Farszmil v. Comm'r of Soc. Sec.*, 19-CV-00390, 2020 U.S. Dist. LEXIS 114105, at *20 (W.D.N.Y. June 29, 2020). A determination made at Step three therefore need not carry over verbatim to the ultimate RFC determination because the two determinations require distinct analysis. *Id.* In fact, the standard for disability at step three is higher than the standard at steps four and five. *See* 20 C.F.R. § 404.1525 (a listing-level impairment is one that is "severe enough to prevent an individual from doing any gainful activity"). The ALJ's finding that this medical opinion evidence was persuasive toward making the RFC determination does not create a binding effect on whether those opinions establish plaintiff's functional impairments under the "paragraph B" criteria at step three. As a Court in this district explained, "[w]hile the analysis at steps two and three concerns the *functional effects* of mental impairments, the RFC analysis at step four specifically considers *work-related* physical and mental activities in a *work setting*." *Chappell v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 69640, at *18 (W.D.N.Y. Apr. 21, 2020) (emphasis in original). "As a result, a finding at steps two or three does not automatically translate to an identical finding at step four." *Id.* Unlike the matter of *Eric G. v. Comm'r of Soc. Sec.*, 19-CV-1328, 2021 U.S. Dist. LEXIS 49148 (W.D.N.Y. Mar. 16, 2021), there is no inherent inconsistency between the ALJ's step three and RFC determinations, nor do his step three conclusions lack explanation. Here, the ALJ's step three analysis discussed and considered findings from Dr. Fabiano's examination and such discussion provides the Court the ability to understand his reasoning.

The Court finds that the ALJ's step three conclusion that plaintiff did not meet or equal a listed impairment is well-supported by the evidence, and was separate from, and

not inconsistent with, the ALJ's later determination of plaintiff's RFC based on his work-related abilities.

### b. *RFC Determination*

In deciding a disability claim, the ALJ must "evaluate every medical opinion he receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997) (citing 20 C.F.R. § 404.152(d)). Although an ALJ's conclusions may not "perfectly correspond" with any of the opinions of medical sources cited in his decision, he is entitled to weigh all of the evidence available to make findings that are consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (in the context of RFC assessments) (citing *Perales*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).

Here, the ALJ's RFC determination is supported by substantial evidence. The ALJ found that plaintiff was capable of simple, unskilled, light work with limited social interaction and a low stress environment. He explained that he made such a determination based on plaintiff's disposition during examinations; intact immediate memory recall, attention, and concentration; ability to maintain friendships; live with others; shop in stores; take the bus; work part-time construction, plumbing, and heating jobs; and perform various other daily activities. (Tr. 20-24). He also relied on the opinions of Dr. Khanam, Dr. Fabiano, Dr. Juriga, Dr. Krist, Dr. Poss, and Dr. Hoffman, all of which he found "generally persuasive." (Tr. 23-24).

Plaintiff's argument that the ALJ failed to reconcile the opinions of Dr. Khanam and Dr. Fabiano with the RFC findings and other persuasive opinions is without merit because plaintiff has not shown that the cited opinions are inconsistent with the others or the RFC. In fact, the ALJ incorporated each of those opinions into the RFC and plaintiff has not established that he is more limited than the ALJ determined. *See Smith v. Berryhill*, 740 Fed. Appx. 721, 726 (holding that a plaintiff has the duty to prove a more restrictive RFC).

More specifically, Dr. Khanam's opinion that plaintiff was limited in social interaction and adaption is not inconsistent with the ALJ's determination that plaintiff was limited to unskilled, low stress work with only occasional interaction with others. Indeed, the ALJ cited those specific opinions of Dr. Khanam in his decision. (Tr. 23). Further, the ALJ's conclusions about plaintiff's mental functioning are supported, and informed, by the opinions of Dr. Hoffman and Dr. Juriga, who found that plaintiff could perform simple directions, could have brief interactions with others, and could handle supervision in customary work settings. (Tr. 24, 104, 123). *See Ward v. Comm'r of Soc. Sec.*, 18-CV-1317, 2020 U.S. Dist. LEXIS 99036, at *7 (W.D.N.Y. June 4, 2020) (collecting cases) ("many courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a claimant's ability to handle brief and superficial contact, an RFC containing a limitation to 'occasional interaction' is supported by substantial evidence").

It is also inaccurate to say that the ALJ implicitly rejected Dr. Fabiano's opinion regarding plaintiff's marked limitations in ability to understand, remember, or apply complex directions; interact adequately with supervisors, co-workers, and the public; and regulate emotions, control behavior, and maintain well-being. It is apparent to this Court

that the ALJ incorporated Dr. Fabiano's opinion when crafting the RFC. *See Miller v. Berryhill*, 16-CV-06467, 2017 U.S. Dist. LEXIS 153578, at *19-20 (W.D.N.Y. Sept. 20, 2017) ("[O]pinions assigning "marked" limitations in various work-related functions do not conclusively demonstrate that a claimant is unable to work."). Consistent with Dr. Fabiano's finding of marked limitations in interacting with others, the ALJ limited plaintiff to only occasional interaction with supervisors, co-workers, and the public. This assessment was not in error. *See Fiducia v. Comm'r of Soc. Sec.*, 13-CV-285, 2015 U.S. Dist. LEXIS 86974, at *12 (N.D.N.Y. July 2, 2015) (finding that a medical report of "marked" limitation in social interaction was consistent with the ALJ's limitation to work that does not require more than occasional interaction with the public and co-workers). Similarly, Dr. Fabiano's opinion of plaintiff's marked limitations in regulating emotion and controlling behaviors was reflected in the RFC's provision for simple and low-stress work with no independent decision-making or goal setting, no strict production quotas, and minimal changes in work routine and processes. *See Hill v. Comm'r of Soc. Sec.*, 18-CV-1161, 2020 U.S. Dist. LEXIS 29247, at *12 (W.D.N.Y. Feb. 20, 2020) (finding that limitation to simple and routine tasks, simple work-related decisions, and only occasional interaction with other adequately accommodates marked limitations in a claimant's ability to adapt or manage oneself); *but see Terry M. v. Comm'r of Soc. Sec.*, 19-CV-6550, 2021 U.S. Dist. LEXIS 77817 (W.D.N.Y. Apr. 22, 2021) (rejecting conclusion that plaintiff could occasionally interact with supervisors and coworkers despite moderate to marked limitations in appropriately dealing with stress because the ALJ failed to explicitly consider how plaintiff's stress tolerance could affect her RFC). Lastly, the RFC appropriately incorporated Dr. Fabiano's assessment of plaintiff's mild limitations in understanding,

remembering, and applying simple directions and instructions; mild to moderate limitations and sustaining concentration and performing tasks at consistent pace; and marked limitations in understanding, remembering, and applying complex directions and instructions. These limitations are consistent with an RFC for simple, unskilled work without strict production quotas. *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (finding substantial evidence that a plaintiff could engage in "simple, routine, low stress tasks" notwithstanding her limitations in concentration, persistence, and pace); *Lewis v. Comm'r of Soc. Sec.*, 18-CV-150, 2019 U.S. Dist. LEXIS 123543, at *13-14 (W.D.N.Y. July 24, 2019) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning, including stress."). Contrary to the plaintiff's assertion, nowhere in Dr. Fabiano's statement does he opine that plaintiff was "limited in his ability to meet all of the basic mental demands of unskilled work." (*See* Tr. 334). For these reasons, the Court also rejects plaintiff's assertion that the opinions of Dr. Khanam and Dr. Fabiano needed to be reconciled with the other opinion evidence. The Court sees no significant inconsistencies between the opinions which the ALJ found generally persuasive, nor with the RFC. Therefore, the ALJ made no error in failing to explain such.

In sum, the Court finds that the ALJ's decision was based on proper application of the law and is supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 19) is denied and Commissioner's motion for judgment on the pleadings (Dkt. No. 21) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: September 23, 2021
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge